NATIONWIDE MUTUAL INSURANCE COMPANY, Plaintiff-Appellee, v. MANLEY, Defendant-Appellant, SIMPSON, WARREN ZONE CAB COMPANY, Defendants-Appellees.

Ohio Appeals, Seventh District, Trumbull County.

No. 1378.   Decided April 4, 1957.

Hoppe, Day & Ford, Warren, for plaintiff-appellee.
Steven Robinson, Warren, for defendant-appellees.
Gillmer, Klinger & Keating, Warren, for defendant-appellant.

## OPINION

By PHILLIPS, J.

On November 12, 1954, plaintiff, Nationwide Mutual Insurance Company, issued its policy of insurance No. 92R-176-050 to defendant, Frances E. Simpson insuring her until March 18, 1955, against personal injuries to others and property damages caused by her negligent operation of her Chevrolet sedan. At the date of issuance plaintiff mistakenly purported to cancel its policy number 92R-162-955 issued to Charles Simpson and the Second National Bank, as mortgagee, on the Kaiser automobile of Charles Simpson and to credit policy 92R-176-050 with $24.40 part of the unearned premium of purported cancelled policy 92R-162-955. On November 18, 1954, plaintiff paid defendant Frances E. Simpson $20.17 as the amount of the unearned premium on policy number 92R-162-955.

Thereafter plaintiff advised Charles Simpson and defendant, Frances E. Simpson, his wife, of its mistake in crediting policy number 92R-176-050 with part of the unearned premium of policy 92R-162-955, and of paying the balance thereof to Charles Simpson, and requested that such amount be repaid to it.

By its terms policy 92R-176-050 provided for cancellation thereof by plaintiff by mailing to the named insured, defendant, Frances E. Simpson, at the address shown in the policy written notice of such cancellation when not less than ten days thereafter such cancellation should be effective.

In accordance with the stated provisions of policy 92R-176-050, on March 4, 1955, plaintiff notified Frances E. Simpson by letter, which letter was received by defendant Simpson on March 7, 1955, that policy No. 92R-176-050 was cancelled effective 12:01 A. M. March 18, 1955, unless $28.30, the amount of the premium paid to The Second National Bank, was paid plaintiff by that time, which was not paid at that time on that date.

On March 27, 1955, the Chevrolet automobile theretofore insured by policy 92R-176-050 and being driven by defendant, Frances E. Simpson, was involved in a collision with a taxicab owned and operated by Warren Zone Cab Company, in which cab defendant, John Manley, was a passenger.

As the result of such collision defendant Manley sued defendant,

Frances E. Simpson, and Warren Zone Cab Company in the court of common pleas in case numbered 64649 on the docket of that court to recover damages for personal injuries received allegedly as the result of defendant's negligence in such collision on March 27, 1955.

While case number 64649 was pending in the court of common pleas plaintiff filed an action in the court of common pleas against defendant, Frances E. Simpson, Warren Zone Cab Company, and John Manley in which they prayed for a declaratory judgment as follows:—

"* * * finding and declaring that policy No. 92R-176-050 aforesaid was duly cancelled effective March 18, 1955, and that defendants or any of them have no rights thereunder and no claim against this plaintiff; that this plaintiff is under no duty to defend any action against the defendant Frances E. Simpson against any action arising subsequent to March 18, 1955; that such policy does not indemnify the defendant Frances E. Simpson, John Manley or Warren Zone Cab Company, and that this plaintiff is not liable for any judgment which may or might hereafter be recovered in the action aforesaid or otherwise; for its costs and for all such other relief as may be necessary and proper for the protection of this plaintiff in the premises."

The evidence supports the statement made by plaintiff's counsel by brief that:—

"On March 28, 1955, Charles Simpson appeared at the Warren office of plaintiff and paid $7.13 (R. 144-146) which money was to be paid to Ross Baker for a 'New Pol.', and was in fact so paid to him (DX-A). No explanation was offered by Mr. Simpson when he testified as to the purpose of such payment and it stands unexplained and unrelated to any of the transactions surrounding cancellation of policy No. 92R-176-050.

"On March 31, 1955, defendant Simpson acquired title to a 1949 Pontiac (PX-22; R. 153, 157) and on April 11, 1955, Charles Simpson applied for insurance on his wife's Pontiac. Pursuant thereto policy No. 92R-201-686 (PX-22) was issued as of April 11, 1955, although no premium was paid at that date (R. 152, 159). Two days later Mr. Simpson paid a $24.40 premium at the Warren office of plaintiff (DX-B, R. 147). While he testified that he did not know what that payment was for, it was the amount of the premium due on a new policy No. 92R-201-686, and being paid two days after the policy was applied for and taken out must have been meant to apply to the new policy   In any event, while the receipt (DX-B) bore the policy No. 92R-176-050, that reference was made for the purpose of reviving the defendant's membership so that it could be transferred to the new policy (R. 157) and the Due Date 4-19-55 was after the collision. Liability coverages were not reinstated and were the result of the new contract entered into on April 11, 1955. That contract was to operate prospectively and not retroactively as the six month term April 11, to October 11, 1955 shows. Mr. Simpson also had his own car, a Cadillac, insured with plaintiff and a like $24.40 premium was due on Cadillac policy at the time the $24.40 was paid (DX-D)."

The trial judge sitting as the trier of the facts by agreement of counsel, acting on the request of defendant Manley, made findings of fact in writing substantially as set forth in the prayer of plaintiff's petition,

and in the factual statement of this opinion, and entered judgment accordingly.

Defendant Manley appealed from that judgment on questions of law and filed nine assigned grounds of error in which he contends the trial judge erred to his prejudice, which, as suggested by counsel for plaintiff-appellee by brief, in our judgment present the following questions:—

"1. Was defendant-appellant Manley a proper party to this action?

"2. Was plaintiff's policy No. 92R-176-050 issued to defendant Simpson on November 12, 1954 cancelled as of 12:01 a. m., March 18, 1955?

"3. Did plaintiff-appellee, by its conduct waive cancellation of policy No. 92R-176-050? (This was not an issue in the case but we shall, nevertheless, discuss it.)" (sic.)

In the case of **Travelers Indemnity Co. v. Cochrane, Jr., 155 Oh St 305,** it is said in the first paragraph of the syllabus:—

"A controversy between an insurer and his insured under an automobile liability insurance policy as to the fact or extent of liability thereunder to persons injured as a result of the operation of the insured automobile or as to the insurer's obligation to defend the insured in an action for damages against him is an actual or justiciable controversy determinable by a declaratory judgment."

On authority of that case we conclude that defendant-appellant Manley was a proper party to this action.

Also see Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U. S. 270, 61 S. Ct. 510; and **Universal Underwriters v. Gran, 52 O. O. 60.**

The cancellation clause of policy 92R-176-050 provides:—

"21. Cancellation.

"This policy may be cancelled by the named insured by mailing to the company written notice stating when thereafter such cancellation shall be effective. This policy may be cancelled by the company by mailing to the named insured at the address shown in this policy written notice stating when not less than ten days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice, and the effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the named insured or by the company shall be equivalent to mailing.

"If the named insured cancels, earned premiums shall be computed in accordance with the customary short rate table and procedure. If the company cancels, earned premiums shall be computed pro rata. Premium adjustment may be made at the time cancellation is effected and, if not then made, shall be made as soon as practicable after cancellation becomes effective. The company's check or the check of its representative mailed or delivered as aforesaid shall be a sufficient tender of any refund of premium due to the named insured."

The policy cancellation provision in the policy of insurance in the case of **Gibbons v. Kelly, 156 Oh St 163,** was identical with that of provision twenty-one in policy 92R-176-050, with the exception that only five days notice of cancellation was required in the policy in that case.

In the case of Gibbons v. Kelly, supra, the cancellation notice stated that the policy was being cancelled for non-payment of premium and accordingly no unearned premium was due defendant. Actually the premium had been paid and the unearned premium was credited to the agent who wrote the policy on a debt owed by the defendant insurance company to such agent.

In the opinion written in the case of Gibbons v. Kelly, supra, the supreme court said:—

. "1. A person injured by an insured cannot recover from the insurer under the provisions of §9510-4 GC, if, before the injuries were received, there was a valid cancellation of the insurance which would otherwise have justified recovery against the insurer by the person so injured.

"2. In the absence of legislation the rights of the parties on cancellation of an insurance policy pursuant to its terms are as fixed by the contract as set forth in the policy.

"3. Where a policy of insurance provides that it 'may be cancelled by the company by mailing to the named insured * * * written notice stating when not less than five days thereafter such cancellation shall be effective,' that the time of cancellation 'stated in the notice shall become the end of the policy period,' that 'earned premiums shall be computed pro rata,' that 'premium adjustment may be made at the time cancellation is effected and, if not then made, shall be made as soon as practicable after cancellation become effective' and that 'the company's check or the check of its representative mailed or delivered as aforesaid shall be a sufficient tender of any refund or premium due to the named insured,' the refund of unearned premium to the insured is not a condition, either precedent or subsequent, to effective cancellation of the policy; and, after cancellation pursuant to such written notice, the insurer is merely indebted to the insured for the amount of any such unearned premium.

"4. Where an insurer is not required by the terms of the policy to give a reason for its cancellation, the fact that its notice of cancellation gives a reason and that reason is not a correct reason will not affect the validity of such cancellation."

At page 167 of the opinion it is said:—

"The fact that the insurer stated that cancellation was for nonpayment of premium when the premium had been paid, has no significance in the instant case. Under the terms of this policy the insurer was not required to give any reason for cancellation. Where an insurer is required to give no reason for cancellation of a policy, the fact that its notice of cancellation gives a reason and that reason is not a correct reason will not affect the validity of such cancellation."

Also see **Plotner v. Buckeye Union Casualty Co., 94 Oh Ap 94.**

In our opinion the cited cases control in the case under review, and we conclude that policy number 92R-176-050 issued to defendant, Frances E. Simpson, on November 12, 1954, was duly cancelled by plaintiff on March 18, 1955.

The ten day period for March 18, 1955, to March 28, 1955, was a period of delinquency of Frances E. Simpson. During that entire period her Chevrolet automobile was not covered by insurance. If policy 92R-176-050

was reinstated it was reinstated on March 28, 1955, when $7.13 was paid to plaintiff.

In Motz v. Root, 53 Oh Ap 375, at page 376, it is said:—

"A waiver is the voluntary surrender or relinquishment of a known legal right by agreement, supported by a consideration, or by a failure to exercise a privilege to claim a right when the acts and conduct connected with such failure are such as to plainly indicate an intention not to claim such right, * * *."

At page 377 it is said:—

"In many cases where a waiver is claimed by reason of a party's neglect to insist upon his right at the proper time, the circumstances have been such as to lead the court to the conclusion that there was no waiver unless the other party was misled to his prejudice; but there are many other cases where claimed waivers were sustained although no element of estoppel or consideration existed. * * *

"A waiver may be proved by express declaration, or by acts and declarations manifesting an intent and purpose not to claim the supposed advantage, or by a course of acts and conduct, or by so neglecting and failing to act, as to clearly evidence that it was the person's intention and purpose to waive."

The evidence discloses that plaintiff acted in strict accordance with the quoted policy cancellation provision, and its act of cancellation on March 18, 1955, it seems to us showed an intent to cancel policy number 92R-176-050 which in our opinion defeats "any legal basis for a claimed waiver of legal rights" by the defendant.

Viewing the evidence in its entirety we, like the trial judge, can not construe the actions of Charles Simpson as his intention to reinstate policy number 92R-176-050 nor plaintiff's actions as accepting money for that purpose.

If policy number 92R-176-050 was cancelled reinstatement thereof created a new contract between the interested parties effective as of the date of reinstatement, especially where, as in the contract under consideration, the policy did not provide for its reinstatement or reinstatement was at the plaintiff's option.

See the following cases cited by plaintiff by brief: Schwer, Admx. v. Benefit Assn. of Railway Employees, Inc., 153 Oh St 312; MacDonald v. Metropolitan Life Ins. Co., 304 Pa. 213, 155 Atlantic 491; Eisenberger v. National American Accident Ins., Co., 165 Atlantic 295; and Elliott v. Farmers Mutual Fire Ins. Assn., 10 N. W. (2nd) 556, where at page 560, it is said:—

"* * * Under the notice the appellant was required to pay the assessment before it became delinquent, and not having done so he is in no position to complain. He had repeated notices of the delinquency, and there is nothing in the record to indicate that he evinced the slightest desire to pay what he owed until after the fire. The fact that he sent a check to the company a few days after the fire does not help his case. That payment was due October 1, 1937."

We believe, as the trial judge found, that there was no waiver of the cancellation, and that neither plaintiff nor the Simpsons intended to reinstate policy number 92R-176-050.

This conclusion is supported by the evidence summarized by plaintiff's counsel by brief and lifted therefrom as follows:—

"* * * The day after the accident, Mr. Simpson came into the local office of Nationwide and paid $7.13 to the clerk instructing her it was for a 'new pol.' and was to be transmitted to Agent Ross Baker (R. 144-146) Mr. Simpson on the witness stand did not claim he intended that payment to reinstate the cancelled policy. On April 11, Charles Simpson once again had Ross Baker write a new policy on appellee Simpson's Pontiac purchased after the collision and as a replacement for the totally wrecked Chevrolet covered by cancelled policy No. 92R-176-050 (R. 149, 150). Two days later Mr. Simpson was again at the local office with $24.10 to pay to Nationwide (DX-B, R. 147). He again offered no explanation of the payment on trial. Is it more logical to assume that he was paying six months' liability insurance coverage on an automobile that was a total loss, or was paying $24.40 for six months' liability insurance coverage for the newly purchased Pontiac? The trial court found that he intended payment on the Pontiac policy."

We cannot conclude that the trial judge erred in the introduction of "irrelevant testimony and admitted immaterial evidence, and specifically of allowing evidence of transactions between appellee, Nationwide Mutual Insurance Company, and one Charles S. Simpson;" in denying "appellant's demurrer to the evidence at the close of plaintiff-appellee's case"; nor in overruling the motions of defendant Manley and Warren Zone Cab Company to "be dismissed from the action for the reason that no justiciable controversy existed between plaintiff-appellee and appellant and appellee Warren Zone Cab Company"; nor in "finding that policy 92R-176-050 issued to appellee Frances E. Simpson by appellee Nationwide Mutual Insurance Company had been effectively cancelled"; nor that the "alleged cancellation, if effective, of policy 92R-176-050, was not waived by the subsequent acts, words and conduct of appellee, Nationwide Mutual Insurance Company; nor in finding that that policy was not in force and effect on March 27, 1955; nor that the verdict and judgment entered thereon are against the manifest weight of the evidence or contrary to law as claimed by defendant Manley in his assignment of errors.

Appellant's counsel has failed to call our attention to "other errors manifest upon the face of the record," as alleged as a ground of error, or to comply in respect thereto with the provisions of Rule VII of this court that his brief "shall contain a statement of the questions presented and a succinct statement of so much of the cause, referring to the pages of the record, as is necessary to show how the questions arose, together with a statement of the authorities relied upon." Accordingly we will not pass upon this assigned ground of error.

The judgment of the court of common pleas is affirmed.

NICHOLS, PJ, concurs.
GRIFFITH, J, concurs in judgment.